**WEYLIN CORPORATION, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**No. 16643.**

United States District Court,
W. D. Missouri, W. D.

April 22, 1970.

William H. Leedy, Kansas City, Mo., for plaintiff.

Calvin K. Hamilton, U. S. Dist. Atty., Kansas City, Mo., John DeBruyn, Dept. of Justice, Tax Div., Washington, D. C., for defendant.

## FINDINGS AND OPINION

ELMO B. HUNTER, District Judge.

Plaintiff, Weylin Corporation, has brought the instant action against the United States under authority of Title 28 United States Code, Section 1346(a)(1) as amended. The corporation's claim is for the recovery of income taxes (and interest thereon) allegedly erroneously and illegally assessed and collected.

Plaintiff is a corporation organized and existing under the laws of Missouri with its principal place of business at 17 West 11th Street, Kansas City, Missouri. On or about November 15, 1961, plaintiff filed in the office of the District Director of Internal Revenue at Kansas City, Missouri, its United States Corporation Income Tax Return for the fiscal year beginning September 1, 1960, and ending August 31, 1961, showing a total income tax liability for that year in the amount of $6,285.21 which amount was paid by plaintiff to defendant about November 15, 1961.

Upon audit of the return the Commissioner of Internal Revenue disallowed $4,200.00 of $13,200.00 deducted for compensation paid to officers allegedly for personal services performed for the corporation; disallowed $229.60 of $688.81 deducted allegedly for entertainment expenses incurred on behalf of the corporation; and disallowed $17,300.00 of $22,223.24 allegedly deducted for interest paid on a "debenture indebtedness". As a result, the Commissioner of Internal Revenue assessed additional income taxes in the sum of $8,996.00 plus interest of $1,799.20. This latter sum was paid under protest to the District Director of Revenue at St. Louis, Missouri. In the instant action in Count I

plaintiff seeks to recover that sum with interest.

In Count II, concerning the fiscal year of plaintiff ending August 31, 1962, there was a disallowance of $4,200.00 of $13,-200.00 allegedly deducted for compensation paid to officers for personal services rendered to the corporation; a disallowance of $293.73 of $881.18 allegedly deducted for entertainment expenses incurred on behalf of the corporation and a disallowance of $6,920.00 of $8,610.50 allegedly deducted for interest on an indebtedness of the corporation.[1] As a result plaintiff was assessed additional income taxes for fiscal year 1962 in the sum of $3,598.40 plus interest of $503.78 which plaintiff paid under protest to the District Director of Revenue at St. Louis, Missouri. Plaintiff in Count II seeks to recover that sum with interest.

At the time of trial to the Court on July 14, 1969, plaintiff conceded with respect to his claim of entertainment expense in both years and abandoned that claim.

With regard to the question of law presented by the disallowance of the interest deductions in fiscal years 1961 and 1962 the parties agreed that issue turned on the question of whether the involved debentures (in evidence) constituted a true debt instrument or were a substitute for equity; that with respect to the compensation of officers, the question was whether it was reasonable for the services rendered.

■ The burden of proof is upon plaintiff to prove its various claims for refund of taxes paid under protest, and interest thereon.

Plaintiff produced three witnesses in support of its various contentions. A careful review of their testimony convinces that with regard to the compensation of officers' claim in fiscal 1961 and in fiscal 1962 there is a failure on behalf of plaintiff to satisfy its burden of proof that the disallowed sum was reasonable for the service performed on behalf of the plaintiff corporation.[2] The evidence, if anything, is persuasive that the services plaintiff contends were rendered to plaintiff corporation were in fact rendered, if at all, by Mr. Thomas C. Bourke, secretary-treasurer of plaintiff corporation as an officer of other corporations or business entities. Mr. Bourke, a highly respected and obviously sincere and honest citizen of the Kansas City area was unable to particularize to any appreciable degree concerning work performed solely for plaintiff corporation, and his frank testimony indicated much of his work in question in this case was performed under one or more as he put it "of the many hats he wore" rather than for plaintiff corporation.[3] He was president of Hardy Phoenix Corporation, a real estate firm with its business address at the same place as plaintiff corporation's address. He received compensation from that corporation also, which received fees from plaintiff corporation for work it did for plaintiff corporation, which work was mainly performed by Mr. Bourke. Mr. Bourke also served as president of the Corrigan Realty Company in which he held stock but drew no salary. Plaintiff corporation was a tenant of Corrigan Realty. Some of his work appeared to be for that company.

■ For the above reasons, the Court finds against plaintiff corporation on its

1. Internal Revenue Code, Sec. 23, provides that in computing net inome there shall be allowed as deductions: " * * * all interest paid * * *."

2. Section 162 of the Internal Revenue Code of 1954, as amended, provides: "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, in-cluding— '(1) A reasonable allowance for salaries or other compensation for personal services actually rendered;' * * *"

3. He testified: "Sir, as an individual I did work. As an officer of Hardy Phoenix I did work, and as an officer of Weylin I did work. It is a little bit hard in my mind to separate these things."

fiscal year claims of 1961 and 1962 for tax money paid under protest upon the disallowance of the mentioned sums of $4,200 (1961) and $4,200 (1962).

Remaining is the question of whether the debenture in evidence constituted a true debt instrument or was a substitute for equity. Before examining that question it is helpful to view the Weylin Corporation in more detail.

Weylin Corporation had a capital of $9,500.00, represented by 9,500 shares of fully paid, nonassessable $1.00 par value common stock. It had seven common stockholders, including Col. Bourke, Mrs. Bourke, and Miss Eleanore Sheley, who assisted Col. Bourke in much of his varied corporate work. No shareholder had actual control. Weylin Corporation had outstanding $86,500 in principal sum of debentures. These debentures had been issued from time to time between 1951 and 1958. They were issued for cash. They were not held in the same proportion as common stock. Some holders of common stock did not own any debentures, and some debenture holders did not own any common stock.

The debentures are due twenty years from date of issue. They bear interest at the rate of eight percent per annum from date of issue to maturity or redemption, whichever first occurs. Payment in interest on the debentures may be deferred by Weylin in years when the corporation has income of less than $25,000 per year. The debentures contain provisions for redemption and for extension beyond the twenty year term.

For decision is whether these indentures purporting to be a corporate indebtedness are such, or whether they in fact are a form of stock. A review of the case decisions show that both the Courts and Congress have declined to draw hard and fast rules. Each case must be decided on its own peculiar facts and circumstances.

From the cases, certain considerations, factors or criteria have been announced as generally helpful. These may be summarized as follows:

(1) The intention of the parties at the time of issuance;

(2) The nomenclature adopted by the parties;

(3) Whether the obligation has a definite maturity date, fixed and ascertainable in all events;

(4) Whether the instrument gives a preferred position as to the payment of interest and principal at maturity;

(5) Whether the holders of the securities have voting powers;

(6) Whether the instrument bears a fixed rate of interest;

(7) Whether the instrument contains redemption or retirement provisions;

(8) Whether the obligation to pay is positive and unconditional;

(9) Whether the security is redeemable at the election of the holder;

(10) Consideration of the amount and reality of the risk involved.

See, John Kelley Co. v. Commissioner of Internal Revenue and Talbot Mills v. Commissioner of Internal Revenue, 326 U.S. 521, 66 S.Ct. 299, 90 L.Ed. 278, 279 (1946); Kraft Foods v. Commissioner of Internal Revenue, 232 F.2d 118 (2nd Cir. 1956); Gloucester Ice and Cold Storage Co. v. Commissioner of Internal Revenue, 298 F.2d 183 (1st Cir. 1962); Taft v. Commissioner of Internal Revenue, 314 F.2d 620 (9th Cir. 1963); Utility Trailer Mfg. Co. v. United States, 212 F.Supp. 773 (D.C.Cal.1962).

In the Kelley case, supra, in examining the particular documents before it the Supreme Court noted, loc. cit. 530, 66 S.Ct. " * * * The documents under consideration embody elements of obligations and elements of stock. *There is no one characteristic, not even exclusion from management, which can be said to be decisive in the determination of whether the obligations are risk investments in the corporations or debts.* So

called stock certificates may be authorized by corporations which are really debts and promises to pay may be executed which have incidents of stock. * * * (emphasis added)."

 Applying the teachings of the above mentioned cases and their guidelines to the Weylin indentures and to the circumstances involved in their issuance it appears that these indentures pass the majority of the tests that indicate a true debt instrument. The Court finds from the evidence in the case that these debentures were intended by the interested parties to be treated as true debt instruments. They were issued for cash and brought substantial new money into the enterprise. They have a definite, ascertainable, fixed maturity date. They are subordinated only to debts due banks, bankers or trust companies, a reasonable subordination for a true debt in view of the particular business circumstances of Weylin Corporation at that time. The rate of interest is realistic and fixed. The obligation to pay is unconditional. While there is a privilege to *defer* payment when the issuance of the corporation is less than $25,000 this deferring provision is not inconsistent with a true debt situation in view of the overall circumstances of the corporation's financial picture and amended income.

In accordance with the foregoing findings and discussion it is the finding and conclusion of the Court that the questioned debentures are true debt instruments representing a bona fide debt obligation of Weylin Corporation, and that the questioned payments are interest rather than dividends.

Weylin is entitled to judgment in accordance with this opinion. The attorneys for the parties are directed to submit to the Court within fifteen days a computation of the judgment amount, or advise the Court within that time if agreement as to that amount cannot be reached. In the latter event each attorney shall within the fifteen day period submit to the Court his computation of such judgment amount.

It is so ordered.