**UNITED STATES v. WOOTEN et al.**

No. 10258.

Circuit Court of Appeals, Fifth Circuit.

Dec. 29, 1942.

Louise Foster and J. Louis Monarch, Sp. Assts. to Atty. Gen., and Samuel O. Clark, Jr., Asst. Atty. Gen., and Clyde O. Eastus, U. S. Atty., of Fort Worth, Tex., for appellant.

Ellis Douthit, of Abilene, Tex., for appellees.

Before HUTCHESON and McCORD, Circuit Judges, and KENNERLY, District Judge.

KENNERLY, District Judge.

This is a case arising under the Income Tax Laws of the United States, and particularly under the Revenue Act of 1932, Chapter 209, 47 Stat. 169, 26 U.S.C.A. Int. Rev.Acts, page 475 et seq.

During the year 1931, appellees H. O. Wooten and wife, then, before, and since, residents of Texas, sustained losses, amounting to $9,654.74, by certain stocks owned by them in four corporations becoming worthless. They claimed such losses as a deduction in their income tax returns for 1932, but the claim was not allowed, and they paid taxes amounting to $1,301.38 in excess of what they would have paid had such claim been allowed. When their claim for refund was rejected, they brought this suit in the District Court against appellant, the United States of America, to recover back the excess taxes so paid. A trial before the District Judge resulted in judgment for appellees for $1,301.38, with interest, and appellant has appealed and is here complaining of the judgment.

The facts were stipulated in the District Court, and under such stipulation,[1] the question for decision was there and is here whether Wooten's investments in, and activities in connection with, stock in corporations including the stock in the four corporations constituted the operation or carrying on of a trade or business within the meaning of Section 117(a) (1) of the Revenue Act of 1932, so that such losses could, under the Act, properly be carried forward and deducted in computing taxable net income for 1932 under the provisions of Subdivisions (b) and (d) of Section 117. The pertinent provisions of the Act are set forth in the margin.[2]

---

[1] The question for decision is stated in the stipulation, as follows:

"That H. O. Wooten and wife, residents of Texas for many years, during the year 1931 sustained a net loss on certain stocks hereinafter referred to in the amount of $9,654.74, which net loss was claimed as a deduction on Plaintiffs' income tax return for the year 1932. If such net loss was sustained in the operation of a trade or business regularly carried on by H. O. Wooten in the . year 1931 within the meaning of Section 117(a) (1) of the Revenue Act of 1932, then it

is agreed that judgment should be entered for the plaintiffs (Appellees here) in this action in the sum of $1,301.38 and interest thereon from April 20, 1936; and if it should be held that the net loss deduction of $9,654.74 was not sustained in the operation of a trade or business regularly carried on by H. O. Wooten in 1931 within the meaning of that Act, then judgment should be entered for the defendant (Appellant here)."

[2] Revenue Act of 1932, c. 209, 47 Stat. 169:

"§ 23. Deductions from Gross Income

It is stipulated that about 1898, Wooten engaged in the wholesale grocery business, and when his business was incorporated, became its president, and for a time devoted substantially all of his time thereto. But after about 1920, he, although remaining as president of the grocery company at a nominal salary of $150 per month, was not active in its affairs and was consulted only on important company matters. The active and detailed management of the grocery company was left in the hands of others.

Substantially all of Wooten's time after 1920 was devoted to his individual interests and properties, including real estate, rentals, stock in corporations, etc. Between 1920 and 1932, he made many investments, some being in stocks. The stocks were mainly in local enterprises of which he had personal knowledge. During 1930, he made purchases of stock in three corporations and sales of stock in four corporations. In 1931, he made purchases of stock in three corporations and made no sales. In 1932, he made purchases of stock in one corporation and sales in three corporations. During 1928, 1929, and 1930, he purchased the stock in the four corporations on which the losses in question were sustained, such stock becoming worthless in 1931.

Wooten never at any time held himself out to anyone or considered himself as a dealer, speculator, trader, or adviser with respect to stocks of any kind, but confined his stock activities exclusively to his own individual investments. He devoted a very small part of his total time to the purchase of stocks. All stocks purchased by him were purchased purely as an investment and purchased from private persons and not from a stock exchange. His activities with respect to the stock in the four corporations on which the losses were sustained consisted in purchasing and holding the stock, keeping informed with respect to its·value, deciding when to and when not to sell, and collecting dividends, if any, thereon.

There is no claim that the losses were incurred in trade within the meaning of the Act, nor that Wooten was engaged in managing the four corporate enterprises in which he owned the stock and on which the losses were sustained. So that questions which have arisen in cases where those facts were present may be put aside.

The Trial Judge thought Wooten was engaged in and carried on a business within the meaning of the Act. We do not think so. The facts with respect to Wooten's business are substantially similar to those with respect to the taxpayer's busi-

"In computing net income there shall be allowed as deductions:

\*　　　\*　　　\*　　　\*　　　\*

"(e) Losses by Individuals. Subject to the limitations provided in subsection (r) of this section, in the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) if incurred in trade or business; or

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; \* \* \*."

"§ 117. Net Losses

"(a) Definition of 'Net Loss'. As used in this section the term 'net loss' means the excess of the deductions allowed by this title over the gross income, with the following exceptions and limitations:

"(1) Non-business deductions. Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall be allowed only to the extent of the amount of the gross income not derived from such trade or business;

\*　　　\*　　　\*　　　\*　　　\*

"(b) Net Loss as a Deduction. If, for any taxable year, it appears upon the pro-

duction of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year (hereinafter in this section called 'second year'); the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary.

\*　　　\*　　　\*　　　\*　　　\*

"(d) Net Losses for 1930 or 1931. If for the taxable year 1930 a taxpayer sustained a net loss within the provisions of the Revenue Act of 1928, the amount of such net loss shall not be allowed as a deduction in computing net income under this title. If for the taxable year 1931 a taxpayer sustained a net loss within the provisions of the Revenue Act of 1928, the amount of such net loss shall be allowed as a deduction in computing net income for the taxable year 1932 to the same extent and in the same manner as a net loss sustained for one taxable year is, under this Act, allowed as a deduction for the succeeding taxable year." 26 U.S.C.A. Int.Rev.Acts, pages 490, 524, 525.

ness in Higgins v. Commissioner,[3] 312 U.S. 212, 61 S.Ct. 475, 476, 85 L.Ed. 783. The Supreme Court in that case construed Section 23(a) of the Revenue Act of 1932 which refers to the deduction of expenses,[4] and held that the taxpayer was not "carrying on a business" within the meaning of that section. We must here construe Section 23(e) (1) and (2) and Section 117(a) (1) (b) (d) of the same Act, which refer to the deduction of losses. While the wording of the Sections with respect to engaging in and carrying on a business is slightly different, their meaning is the same, and what is said in Higgins v. Commissioner, defining "carrying on a business", is controlling here. In Commissioner v. Burnett, 5 Cir., 118 F.2d 659, 660, the taxpayer sustained losses in the same manner appellees here sustained their losses, and this Court in construing Section 23(e) of the Revenue Act of 1934, 48 Stat. 688, 26 U.S.C.A. Int.Rev.Acts page 672, which is similar in wording to the named Sections of the Revenue Act of 1932, followed Higgins v. Commissioner. See also cases cited in the Opinion in Commissioner v. Burnett.

We think Wooten was not engaged in or carrying on a business within the meaning of the named Sections of the Revenue Act of 1932, and the judgment appealed from is reversed and the cause remanded to the District Court, with directions to, under the stipulation of facts, enter judgment for appellant.

---

3 The facts set forth in the Opinion in Higgins v. Commissioner are as follows:

"Petitioner, the taxpayer, with extentive investments in real estate, bonds and stocks, devoted a considerable portion of his time to the oversight of his interests and hired others to assist him in offices rented for that purpose. For the tax years in question, 1932 and 1933, he claimed the salaries and expenses incident to looking after his properties were deductible under Section 23(a) of the Revenue Act of 1932. The Commissioner refused the deductions. The applicable phrases are: 'In computing net income there shall be allowed as deductions: (a) Expenses. * * * All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *.' There is no dispute over whether the claimed deductions are ordinary and necessary expenses. As the Commissioner also conceded before the Board of Tax Appeals that the real estate activities of the petitioner in renting buildings constituted a business, the Board allowed such portions of the claimed deductions as were fairly allocable to the handling of the real estate. The same offices and staffs handled both real estate and security matters. After this adjustment there remained for the year 1932 over twenty and for the year 1933 over sixteen thousand dollars expended for managing the stocks and bonds.

"Petitioner's financial affairs were conducted through his New York office pursuant to his personal detailed instructions. His residence was in Paris, France, where he had a second office. By cable, telephone and mail, petitioner kept a watchful eye over his securities. While he sought permanent investments, changes, redemptions, maturities and accumulations caused limited shiftings in his portfolio. These were made under his own orders. The offices kept records, received securities, interest and dividend checks, made deposits, forwarded weekly and annual reports and undertook generally the care of the investments as instructed by the owner. Purchases were made by a financial institution. Petitioner did not participate directly or indirectly in the management of the corporations in which he held stock or bonds. The method of handling his affairs under examination had been employed by petitioner for more than thirty years. No objection to the deductions had previously been made by the Government."

4 Section 23(a) of the Revenue Act of 1932, 47 Stat. 169, c. 209, is as follows:

"§ 23. Deductions from Gross Income

"In computing net income there shall be allowed as deductions:

"(a) Expenses. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity." 26 U.S.C.A. Int.Rev.Acts, page 489.