Michael P. and Lillian E. SERINO, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 1457.

United States District Court
D. South Carolina,
Columbia Division.

Feb. 17, 1966.

Walter J. Bristow, Jr., Marchant, Bristow & Bates, Columbia, S. C., for plaintiffs.

Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C., Walter Tribbey, Dept. of Justice, Washington, D. C., for the Government.

MARTIN, Chief Judge.

This is an action for the refund of $5,993.15 in income taxes, plus interest thereon, allegedly overpaid for the years 1956, 1959 and 1960. The suit was brought pursuant to 28 U.S.C. § 1346(a). There exists no dispute between the parties as to venue or jurisdiction.

On June 17, 1965, this action was tried before the Court and a jury. At the close of the presentation of the evidence, the Government filed with the Court a motion for a directed verdict. The plaintiffs

made a similar motion. Upon consideration of said motions, the Court concluded there was no dispute as to any material fact involved in this litigation, and accordingly, the jurors were dismissed. After careful consideration of the testimony and documents involved herein, the Court finds the following facts to be without substantial dispute:

The taxpayers,[1] Michael and Lillian Serino, filed timely federal income tax returns for the years 1956, 1959 and 1960. At a later date, their returns for the years 1959 and 1960 were audited by an agent of the Internal Revenue Service, and certain adjustments made thereto. Additional assessments of tax for said years were subsequently made, and these deficiencies were paid in full by the taxpayers. Timely claims for refund of a portion of the additional taxes assessed were filed, and later denied in full by the Internal Revenue Service. These claims for refund disputed only a portion of the adjustments made to the taxpayers' 1959 and 1960 returns, and additionally alleged that the taxpayers were entitled to a business bad debt deduction in the amount of $25,000. Originally this latter item was claimed as a nonbusiness bad debt on the taxpayers' 1959 return. If deductible in full as a business bad debt, it is more than sufficient to absorb all of the income reported on the 1959 return. Therefore, the taxpayers allege that they are entitled to carry-back the resulting unabsorbed loss, and offset it against their 1956 income under the net operating loss provision of the Internal Revenue Code of 1954. Accordingly, a claim for refund alleging an overpayment of 1956 taxes was also filed. There is no dispute over any of the deductions claimed on the 1956 returns, and it is material to this suit only if the taxpayers are entitled to a net operating loss carry-back from year 1959. The 1956 claim for refund was likewise denied by the District Director of Internal Revenue.

The questions involved here arose out of certain lawsuits brought against the taxpayer, Mrs. Serino. In the fall of 1958, suits were brought against her by Westinghouse Electric Corporation, d/b/a Westinghouse Supply Company and by Westinghouse Electric Corporation, d/b/a Westinghouse Appliance Sales, alleging that she was a partner in a business owned and operated by her son, James Gilbert, under the name of Appliance Distributing Company (ACO). Additionally, a suit was brought against her by Singer Manufacturing Company, which, though on its face raising a question of patent infringement, also sought to hold her liable, as a partner, for the debts of ACO. This suit, as were the two *Westinghouse* actions, was filed in this Court. Ultimately, a summary judgment was entered for Mrs. Serino in the *Singer* action, and a jury verdict was entered in her favor in the two *Westinghouse* cases, which were consolidated for trial purposes. Five other creditor suits were brought against her in the Richland County Court, all of which likewise sought to have her adjudged a partner in ACO. The state court actions were not pursued further after favorable judgments were entered for Mrs. Serino in the *Westinghouse* cases.

These various lawsuits brought against the taxpayer, in substance, raised the question of whether she was a partner in ACO by way of estoppel. Mrs. Serino had assisted her son, on an informal basis, with certain of the business details of operating ACO. Without her knowledge or consent he listed Mrs. Serino as a partner in ACO on statements to Dunn and Bradstreet. However, she in fact had no interest in the profits or losses of the business; was not a salaried employee; and had only loaned certain money to the business at an earlier date. The evidence is undisputed that none of her activities in connection with ACO were engaged in by her for purposes of earning a profit or compensation. Likewise, Mrs. Serino testified that her tailoring shop and ACO were located four to five miles apart, and were not joint or related operations in any sense.

---

1. Where used in the singular, taxpayer refers to Mrs. Lillian Serino.

Shortly after the suits were brought against the taxpayer, she made a loan to ACO of $25,000 through her son, James C. Gilbert, on the advice of counsel. The proceeds of this loan were to be used to pay certain designated creditors of ACO. Under the terms of the loan agreement, letters were to accompany the various payments to the creditors, conditioning acceptance of the payments on the agreement that the recipient would not contend the taxpayer was a partner in ACO. The loan was to be repaid in thirteen months, and to bear 6% interest. The taxpayer's primary motive in making this loan was to rehabilitate her son's business in order to prevent her own business, nonbusiness, and personal assets from possibly being charged with the unpaid debts of ACO.

During the period covered by this suit, the taxpayer operated Serino's Tailor Shops, Fort Jackson, South Carolina. The business is unincorporated, and its sole activity consists of altering uniforms, sewing chevrons and patches, insignia, etc., for military personnel. The business serviced a portion of the Fort Jackson military installation, and included three separate shops in 1959. Mrs. Serino's business was started in 1942, and is still in operation. The tailoring shops are operated under a yearly contract between the Department of Army and the taxpayer. Army Regulations do not permit the taxpayers to advertise in any fashion. According to Mrs. Serino, the various lawsuits brought against her did not in any way affect the renewal of her concession contract; were not commonly known to her customers, nor would not, if known, have caused her to lose any customers. With respect to the effect of adverse judgments on the renewal of Mrs. Serino's business license, a Mr. Meehan, a civilian employee with the Department of Army, testified that such a contract would only be voided where the contracting party was unable to fulfill its terms. Likewise, he stated that while army contracting regulations took into consideration any unpaid judgments against a party, this was but one of the numerous factors in the overall determination of whether a contract would be renewed. Further, he testified that no distinction was made under the contracting regulations between business-created liabilities, as opposed to personal liabilities of the applicant.

During the same period of time, Mr. Michael Serino operated the Fort Jackson Golf Shop, Fort Jackson, South Carolina. As was the case with his wife's business, the golf shop was unincorporated, and was operated under a bi-yearly franchise issued by the Department of Army. The principal business activity of the Golf Shop consisted of the sale of golf equipment and supplies. Mr. Serino, who is a professional golfer, also gave a small number of golfing lessons. By deposition, Mr. Serino testified that the various lawsuits against his wife did not affect the renewal of his golf shop franchise. Likewise, he stated that he did not feel adverse judgments against his wife would have caused his golf shop to lose any of its customers. Additionally, he did not think the $25,000 loan had any connection with the goodwill or reputation of his business.

In July, 1959, the taxpayer's son, James Gilbert, filed a voluntary petition in bankruptcy with this Court. Included among the claims against the bankrupt was the previously described unsecured loan from Mrs. Serino of $25,000. The final report of the referee in bankruptcy was filed in August 1961. No funds were available for the payment of unsecured creditors. Mr. Stokes, the bankrupt's attorney, testified that in September 1959, a sale of the bulk of the bankrupt's property netted the trustee only approximately $16,000.

Three issues are presented by this action:

(1) Whether certain legal fees paid by the taxpayers in connection with her defense of the above actions are deductible as an ordinary and necessary business expense under Section 162 of the Internal Revenue Code of 1954. These fees consisted of $1,528.25 and $2,389.54 claimed on the

taxpayers' 1959 and 1960 returns respectively.

(2) Whether the $25,000 loan made by the plaintiff to her son became fully worthless during the year 1959. The Government does not question the fact that a *bona fide* loan was made, and counsel for the Government conceded such during trial.

(3) If said loan became totally worthless during 1959, is the resulting bad debt of a business or nonbusiness nature under the terms of Section 166 (d) of the Internal Revenue Code of 1954?

■ Section 162 of the Internal Revenue Code of 1954, allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred in carrying on the trade or business. However, a basic restriction placed upon the deductibility of any business expense " * * * is that the expense item involved must be one that has a business origin". United States v. Gilmore, 372 U.S. 39, 45, 83 S.Ct. 623, 627, 9 L.Ed.2d 570 (1963). Thus, the crucial question in determining whether the legal fees paid by the taxpayer are deductible becomes: Did Mrs. Serino's litigation expense originate from her "business" activities? The test for determining whether a particular legal fee is to be characterized as a business or personal expense depends solely upon whether or not the legal fee arises " * * * in connection with the taxpayer's profit-seeking activities. It does not depend on the consequences that might result to a taxpayer's income-producing property from a failure to defeat the claim * * *." United States v. Gilmore, supra, p. 48, 83 S.Ct. p. 629. Any other test would produce irrational and unequal treatment among taxpayers, and would allow deductibility to depend solely upon the happenstance of property ownership. United States v. Gilmore, supra, p. 48, 83 S.Ct. 623.

The origin test, as thus stated, was applied by the Court of Appeals for the Fourth Circuit in Peckham v. Commissioner of Internal Revenue, 327 F.2d 855,

(1964). There, the taxpayer, previously a practicing physician, claimed he was entitled to deduct certain legal fees paid in an unsuccessful attempt to defend himself against a second degree murder indictment and conviction arising out of an illegally performed abortion. In affirming the lower court's decision that the taxpayer's expenses did not constitute a "business" deduction, the court stated at page 857:

> There is no evidence in the record that the abortion which the taxpayer was charged with performing had anything to do with his practice of medicine. As the Tax Court, in its opinion clearly pointed out: "Certainly a physician might be indicted for committing criminal abortion either for acts directly related to his practice of medicine or for acts unrelated thereto." (Footnote omitted.)

Additionally, the Court noted that the taxpayer's belief that a criminal conviction would have resulted in a revocation of his license to practice is not controlling, stating at page 857:

> Moreover, the origin and character of the claim, and not the consequences, determine the deductibility of the expense.

■ The rules laid down in United States v. Gilmore, supra, and Peckham v. Commissioner of Internal Revenue, supra, are controlling as to the legal fee involved in the instant case. The undisputed facts show that Mrs. Serino's tailoring shop activities were in no way connected with ACO. Likewise, it is undisputed that none of her association with her son's business was in any way motivated by a desire to make a profit, or to assist or further her own business interests. The difficulties causing the various lawsuits against Mrs. Serino had nothing to do with any of her business activities. The taxpayer's own testimony establishes this unequivocally. Moreover, Mrs. Serino's fear that adverse judgment might have affected the renewal of her concession contract is not controlling. Peckham v. Commissioner, supra. Accordingly, the defendant's dis-

allowance of the legal fees in question was proper.

■ Before reaching the question of whether or not the worthlessness of the $25,000 loan made by the taxpayer to her son is a business or nonbusiness bad debt, it is necessary to determine whether or not the debt became fully worthless during the year claimed, i. e., 1959. Such a question normally is one of fact. Helvering v. Smith, 132 F.2d 965 (4 Cir. 1932), Rollins v. C. I. R., 4 Cir., 276 F.2d 368. However, the testimony at trial shows as a matter of law, that the "last vestige of value", Bodzy v. C. I. R., 321 F.2d 331, 335 (5 Cir. 1963), had disappeared from the loan in question by the end of 1959. The testimony of Mr. Stokes, the bankrupt's attorney, concerning the relatively small amount of funds netted from the sale of property in September of 1959 leaves no doubt that reasonable men could only have concluded that the debt was totally worthless by the end of that year. In view of his uncontradicted testimony, and the other evidence in the record of the bankrupt's financial affairs, the Court finds that the debt was, as a matter of law, worthless in 1959.

■ The final question involved in this matter is whether the worthless $25,000 loan made to ACO is deductible in 1959 as a business bad debt instead of a nonbusiness bad debt as claimed by the Government. If the former, the full sum may be offset against the taxpayers' 1959 income, and any excess portion of the deduction may be offset against the taxpayers' 1956 taxable income. If deductible only as a nonbusiness bad debt, any loss sustained therefrom is treated as a short-term capital loss, deductible only to the extent of the taxpayers' capital gains, plus $1,000 per year for 1959, and the succeeding five taxable periods. Section 166(d) and Section 1212. The sole question to be decided, therefore, is whether or not the alleged bad debt arose from or had any proximate relationship to the conduct of the taxpayer's business.

■ The defendant's principal argument is that the undisputed facts show that the loan in question did not originate from a business activity of the taxpayer, and that in accordance with the principle stated in United States v. Gilmore, supra, the loan is nonbusiness in nature. The Government further urges that until it is shown that a loan had its origin in a business-seeking activity of the taxpayer, no question of the proximate relationship of the debt to the taxpayer's business activity is reached, and, as a matter of law, the loan must be classified as nonbusiness in nature. On the other hand, the plaintiffs argue that the origin test as stated in *Gilmore* is limited in its application to business expenses, and has nothing to do with whether a bad debt is to be classified as being of a business or nonbusiness nature. After a careful consideration of the various cases cited by both parties, the Court is of the opinion that the plaintiffs' position is not well taken, and that the origin test is applicable in determining whether a bad debt deduction is to be classified as being of a business or or nonbusiness nature. The Supreme Court's decision in *Gilmore* represented a choice between allowing deductibility to hinge upon the consequences of a transaction, as opposed to the origin of the transaction. While *Gilmore* involved the deductibility of litigation costs as a business expense, under what is now Section 162, nothing in the decision limits its application to legal fees. In choosing the origin test, the Court rejected the notion that classification of an item as business or nonbusiness depends upon the happenstance of property ownership, rather than the nature of the underlying transaction giving rise to the payment. This is particularly important in light of the close relationship and similarity that exists between the bad debt provisions and the other "business" deduction statutes present in the Internal Revenue Code of 1954. (The three principal "business" deduction statutes are: expenses, Section 162; losses, Section 165(c) (1); and bad debts, Section 166(d).) This similarity was shown, for example, in Whipple v.

Commissioner of Internal Revenue, 373 U.S. 193, 201, 83 S.Ct. 1168, 10 L.Ed.2d 288, where the Court, in formulating a definition of a business bad debt, relied upon precedents involving the net operating loss deduction (Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397 (1932), and Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389 (1932)), and business expenses (Deputy v. Du-Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940), and Higgins v. Commissioner of Internal Revenue, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941).

▌ In enacting the business bad debt provisions of the revenue laws, Congress chose not to create a radically new type of deduction. Instead, business bad debts were geared to the already familiar tests applicable to trade or business loss deduction. This is clear from the Court's comment in Whipple v. Commissioner of Internal Revenue, supra, where, in discussing the newly enacted business bad debt statute, it was noted (373 U.S. pp. 200–201, 83 S.Ct. p. 1173):

> \* \* \* to remedy what it deemed the abuses of permitting any worthless debt to be fully deducted, as was the case prior to this time, see H.R.Rep. No.2333, 77th Cong., 2d Sess. 45, Congress restricted the full deduction under § 23(k) [now 166(d)] to bad debts incurred in the taxpayer's trade or business and provided that "'non-business" bad debts were to be deducted as short-term capital losses. Congress deliberately used the words "trade or business," terminology familiar to the tax laws, and the respective committees made it clear that the test of whether a debt is incurred in a trade or business "is substantially the same as that which is made for the purpose of ascertaining whether a loss from the type of transaction covered by § 23(e) [now 165(c) (1)] is 'incurred in trade or business' under paragraph (1) of that section." H.R.Rep.No.2333, 77th Cong., 2d Sess. 76–77; S.Rep.No. 1631, 77th Cong., 2d Sess. 90.

\* \* \* \* \* \*

The 1942 amendment of § 23(k) [now 166(d)], therefore, as the Court has already noted, Putnam v. Commissioner [of Internal Revenue], 352 U.S. 82, 90–92 [77 S.Ct. 175, 1 L.Ed.2d 144], was intended to accomplish far more than to deny full deductibility to the worthless debts of family and friends. It was designed to make full deductibility of a bad debt turn upon its proximate connection with activities which the tax laws recognized as a trade or business, a concept which falls far short of reaching every income or profit making activity.

The term "trade or business", as referred to above, has been used consistently in the numerous taxing acts since 1916 to distinguish both losses and expenses generated by such activities, from similar expenditures arising out of mere profit-seeking or personal ventures. Whipple v. Commissioner of Internal Revenue, supra, 373 U.S. p. 197, 83 S.Ct. 1168. In general, the phrase represents a statutory attempt to match all income from a business activity against deductions (whether in the form of expenses, debts or losses) generated by the same activity. Despite slight differences in the wording of the various "business" deduction statutes, the courts have consistently found the concept of engaging in a "trade or business" to be the same. Whipple v. Commissioner of Internal Revenue, supra, pp. 198–199, 83 S.Ct. 1168; United States v. Wooten, 132 F.2d 400 (5 Cir. 1942); Trent v. Commissioner of Internal Revenue, 291 F.2d 669, 674 (2 Cir. 1961); Hirsch v. Commissioner of Internal Revenue, 315 F.2d 731 (9 Cir. 1963).

▌ Thus, as Congress relied upon the pre-existing and similar trade or business provisions of the revenue laws in enacting the business bad debt provisions, it is inconceivable that an item that would fail as a business expense because of its lack of business origin could qualify as a business bad debt. The plaintiffs have suggested no reason to justify the application of what the Supreme Court in *Gilmore* termed the "irrational" consequences test to the claimed bad debt de-

duction, when it is clear at the same time that an origin test must be applied to litigation expenses arising out of the same transaction.

The various decisions relied upon by the plaintiffs,[2] are not in contradiction to the rules stated herein. These decisions, though based upon diverse factual situations, all included one common element that is absent from this case: from start to finish, the conduct giving rise to the expense or loan in question originated in an attempt by a taxpayer to earn a business profit. The record of this case is void of any evidence that would show a similar origin of the loan by the taxpayer to ACO. This is true simply because the lawsuits brought against Mrs. Serino had absolutely nothing to do with any effort on her part to earn a business income and the loan was made in order to rehabilitate her son's business, not in furtherance of her tailoring business. Likewise, the stated "intent" of the taxpayer cannot convert what is objectively a nonbusiness debt into a business bad debt.

In substance, the undisputed testimony shows that the various lawsuits brought against Mrs. Serino, and the loan she made, were unrelated to the operation of her tailoring shop. The only effect the various judgments could have had on her property would have been that adverse judgments presumably could have been satisfied from her property. Her business and nonbusiness property was placed in precisely the same position as it could have been placed by her being charged as a tortfeasor in a personal automobile accident. An outright expense payment or loan to protect her property under these latter circumstances certainly would not qualify as a business deduction. Her situation is no different. Tort liability created or incurred in the conduct of one trade or business is another matter. Plante v. United States, 226 F.Supp. 314 (D.C.N.H.1963). However, the undisputed facts show that this is not the situation here. Accordingly, the plaintiff is not entitled to claim the bad debt as a business deduction. Instead, it is allowable only as a nonbusiness bad debt.

Counsel for the defendant shall prepare a judgment reflecting the Court's findings and conclusions stated herein.

2. Dorminey v. Commissioner, 26 T.C. 940; Allen v. Commissioner of Internal Revenue, 283 F.2d 785 (7 Cir. 1960); Lutz v. Commissioner of Internal Revenue, 282 F.2d 614 (5 Cir. 1960); Weddle v. Commissioner of Internal Revenue, 325 F.2d 849 (2 Cir. 1963); Kelly v. Patterson, 331 F.2d 753 (5 Cir. 1964).