A. H. KELSON and Nyla C. Kelson,
Plaintiffs-Appellees,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 73-1914.

United States Court of Appeals,
Tenth Circuit.

Sept. 23, 1974.

J. Jay Bullock, Salt Lake City, Utah, for plaintiffs-appellees.

Jonathan S. Cohen, Atty., Tax Div., Dept. of Justice (Richard M. Roberts, Acting Asst. Atty. Gen., Meyer Rothwacks and Jane M. Edmisten, Attys., Tax Div., Dept. of Justice, and C. Nelson Day, U. S. Atty., of counsel, on the brief), for defendant-appellant.

Before BREITENSTEIN, McWILLIAMS and BARRETT, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is an income tax case for the refund of taxes paid in 1964, and concerns the carryback of losses incurred in 1966 on the worthlessness of corporate stock and in 1967 on the worthlessness of corporate notes. The issues are the applicability of the statute of limitations to the corporate stock loss claim and the determination of the deductibility of the note loss as an ordinary business loss rather than a capital loss. The district court gave the plaintiff taxpayer judgment for $135,476.65 against the United States. We reverse.

Plaintiff-appellee A. H. Kelson, whose wife Nyla is a party only because of a joint return, incurred capital gains through the liquidation of corporate stock in 1964 and paid a federal income tax for that year of $135,476.65. In 1963 taxpayer formed Bonneville Capital Corporation and was its president and a director in 1964–1967. During the same period he was, and still is, chairman of the board of the Bank of Salt Lake and a director of Continental Thrift and Loan Company, both of which were subsidiaries of Bonneville. By 1965 taxpayer had acquired about ⅔ of the Bonneville stock and had an adjusted base therefor of $366,119.65. Between 1964 and 1966 taxpayer loaned to Bonneville $199,440 and held its notes in that amount.

In 1966 the Bonneville stock became worthless and in his return for that year taxpayer claimed as an ordinary business loss $366,119.65, his adjusted base for the stock. During the 1967 liquidation of Bonneville taxpayer received, in exchange for his notes, stock of the two mentioned Bonneville subsidiaries. The court found that he had a $166,288.42 loss on the notes. The government does not question this amount. In his 1967 return he claimed the loss on the notes as an ordinary business loss.

On April 14, 1967, taxpayer filed a claim for refund of the 1964 tax. The reason given for the claim was "Carryback of 1966 operating loss." The loss for that year arose out of the worthlessness of the Bonneville stock. On March 21, 1968, taxpayer filed a second claim for refund of the 1964 tax. The reason given for this claim was "Claim amended to include carryback of 1967 operating loss. Original claim filed to carryback 1966 net operating loss." The 1967 loss arose out of the Bonneville notes. The first refund claim was disallowed on May 7, 1968, and the second was disallowed on December 31, 1969. The instant suit was filed on December 15, 1971.

So far as applicable, 26 U.S.C. § 6532(a)(1) provides:

> "No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax * * * shall be begun * * * after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary or his delegate to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates."

The instant suit is brought under § 7422(a) for recovery of a tax refund. Notice of disallowance of the first claim based on the stock loss was properly mailed on May 7, 1968, more than two years before the filing of suit on December 15, 1971. The government contends that the statute bars consideration of the stock loss claim.

Taxpayer's reliance on § 6511 is misplaced. That section relates to the filing of refund claims. The government concedes that each claim was filed within time. The question is whether the two-year limitation bars suit on the stock loss claim. It does unless the second claim extends the period within which suit may be brought.

The argument that the second refund claim amends the first and hence protects it from the bar of the statute is not persuasive. The second claim asserts an additional ground for relief based on the note loss. It states no facts or legal theories amplifying the first claim. In Charlson Realty Company v. United States, 181 Ct.Cl. 262, 384 F.2d 434, the second claim was not a

repetition of the first but was based on new grounds. 384 F.2d at 440. In the instant case we have a repetition of the first claim and the assertion of another claim based on a different series of transactions. The taxpayer's cause of action based on the stock loss accrued when the notice of disallowance was mailed and may not be extended or interrupted by the filing of a second claim reasserting the first. Einson-Freeman Co., Inc. v. Corwin, 2 Cir., 112 F.2d 683, 684, cert. denied 311 U.S. 693, 61 S.Ct. 75, 85 L.Ed. 449, and 18th Street Leader Stores, Inc. v. United States, 7 Cir., 142 F.2d 113, 115, cert. denied 323 U.S. 725, 65 S.Ct. 61, 89 L.Ed. 583. Thus the "taxpayer may not keep his claim 'fresh indefinitely' by merely reasserting it." Mertens, Law of Federal Income Taxation § 58.23, Chap. 58, p. 74 (1970). In the instant case we have nothing more than repetition of the stock loss claim. Section 6532(a)(1) makes the statutory bar applicable to the disallowance of "part" of a claim and by its terms bars suit on the stock loss.

■ The fact that IRS acted on the second claim is of no moment. It had to so far as the claim was based on the note loss. The record shows no reconsideration of the first claim but, even if there was, reconsideration does not extend the period. 26 U.S.C. § 6532(a)(4). The decision of the district court would permit the indefinite extension of the statute by the filing of repetitive claims and defeat the purpose of the statute. The claim based on the 1966 stock loss is barred by § 6532(a)(1) and recovery on that claim cannot be had in the instant suit. See Real Estate-Land Title & Trust Co. v. United States, 309 U.S. 13, 18, 60 S.Ct. 371, 84 L.Ed.2d 542.

The suit is timely in so far as the note loss is concerned. Section 166 of the Code allows a deduction for any business debt which becomes worthless during the taxable year. Such debts are subject to the net operating loss carryback provisions of § 172. Losses from nonbusiness debts are considered as capital losses, § 166(d)(1), and subject to §§ 1211 and 1212. A nonbusiness debt is a debt other than one created "in connection with" taxpayer's trade or business. § 166(d)(2). The regulations define a nonbusiness debt as a debt other than one created "in the course of" taxpayer's trade or business, or a debt, the loss from which is not proximately related to the conduct of taxpayer's trade or business. 26 C.F.R. § 1.166–5(b).

The loans were made to Bonneville in 1964–1966 and the loss occurred in 1967. In 1964, 1965, and 1966 taxpayer received compensation from Bonneville in the amounts of $1,750, $6,000, and $6,000 respectively, and in the same years from the Bank of Salt Lake in the amounts of $3,355, $9,223, and $12,320 respectively. He devoted ¼ of his time to Bonneville and the remainder to the Bank of Salt Lake, a Bonneville subsidiary. The total of the loans to Bonneville was $199,440.

In United States v. Generes, 405 U.S. 93, 92 S.Ct. 827, 31 L.Ed.2d 62, the Court noted that taxpayer testified that his sole motive in making loans to his closely held corporation was to protect his employment and salary. 405 U.S. at 99, 92 S.Ct. 827. The Court characterized the testimony as self-serving, 405 U.S. at 106, 92 S.Ct. 827, and said that the proper test to determine whether a bad debt had a "proximate" relation to taxpayer's trade or business is that of dominant motivation. 405 U.S. at 103, 92 S.Ct. 827. The objective facts surrounding loans, rather than the subjective intent, control. 405 U.S. at 104, 92 S.Ct. 827. The courts should compare the accompanying risks of the loans with the potential reward. 405 U.S. at 104, 92 S.Ct. 827. Evidence of a large disparity between the loans and the taxpayer's salary is of some weight. 405 U.S. at 106–107, 92 S.Ct. 827. Mere activity by a stockholder in his corporation's affairs is not enough. 405 U.S. at 104, 92 S.Ct. 827.

The business of the corporation to which a loan is made must be distinguished from the business of the lender. In Whipple v. Commissioner of Internal Revenue, 373 U.S. 193, 83 S.Ct. 1168, 10

**1294**

L.Ed.2d 288, the Court said that the mere devotion of time and energy to the affairs of a corporation does not establish a trade or business. 373 U.S. at 202, 83 S.Ct. 1168. Although such activities may create income or gain, they are more closely related to the successful operation of the corporation's business than to that of the lender. Ibid. The Court rejected the contention that "one who actively engages in serving his own corporations for the purpose of creating future income through those enterprises is in a trade or business." 373 U.S. at 203, 83 S.Ct. at 1174. In the instant case, Bonneville was taxpayer's corporation. Without "substantial additional evidence" management of and assistance to the corporation for a reward are akin to the activities of an investor. Ibid.

Trent v. Commissioner of Internal Revenue, 2 Cir., 291 F.2d 669, and Lundgren v. Commissioner of Internal Revenue, 9 Cir., 376 F.2d 623, are not in point. In the first, the taxpayer made the loan because he was expected to as an employee and would be fired if he did not. 291 F.2d at 670; see also Rev.Rul. 71–561. In the second, the taxpayer was in the same business as his corporation. 376 F.2d at 628.

In Hogue v. Commissioner of Internal Revenue, 10 Cir., 459 F.2d 932, 937–938, we recognized the Generes and Whipple decisions and sustained the Tax Court which had held that the requisite relationship did not exist between the loans and the taxpayer's accounting business. In that case the fact finder found against the taxpayer.

In the instant case the court found that the dominant purpose of taxpayer "was to obtain and secure for himself an executive position with the Corporation and its subsidiaries so as to enable him to obtain compensation for his personal services." Taxpayer did not testify as to his intent in making the loans. He said that the dominant purpose in acquiring Bonneville stock was "to create a position, a job, and give me a chance to build sort of empire." We are concerned with the loans, not with the stock acquisition. The only bit of

the record which pertains to the loans is taxpayer's answer to a written interrogatory in which he said that his trade or business was that of an employee and that the loans to Bonneville were made to obtain and secure "a position of employment with the borrower and/or its affiliated (sic) corporations."

We have no question of credibility. The question is whether the self-serving answer to a written interrogatory suffices to establish the dominant purpose which under Generes entitles the taxpayer to prevail. Generes says that objective facts rather than subjective intent control. 405 U.S. at 104, 92 S.Ct. 827. Taxpayer's salary from Bonneville ranged from $1,750 to $6,000. The total loans were over $199,000. He controlled Bonneville, and the record shows no effort to oust him. Bonneville was a holding company, and taxpayer acquired its stock "to building sort of an empire."

In his 1964 tax return, taxpayer gave his occupation as "banker," and in 1967 as "executive." Nothing shows that he was in the business of making loans. He spent only ¼ of his time with Bonneville. The relationship between his stated occupations and the business of Bonneville is, at the most, speculative.

The disparity between salary and loans is some evidence that the loans were made to protect taxpayer's investment, and only incidently to protect his salary. See Gross v. Commissioner of Internal Revenue, 9 Cir., 401 F.2d 600, 602, and Millsap v. Commissioner of Internal Revenue, 8 Cir., 387 F.2d 420, 422–423.

At the conclusion of the hearing the trial court said that judgment would be for the taxpayer and against the United States, and that counsel should "prepare the papers." Two days later the court signed findings of fact and conclusions of law which show on their face that they were prepared by the attorney for the taxpayer. This practice of the same trial judge was condemned over ten years ago by the Supreme Court in United States v. El Paso Natural Gas Co., 376 U.S. 651, 656–657, 84 S.Ct. 1044, 12 L.Ed.2d 12. The me-

chanical adoption of a litigant's findings is an abandonment of the duty imposed on trial judges by Rule 52, F.R.Civ.P., because findings so made fail to "reveal the discerning line for decision \* \* \* ." Ibid. and particularly n.4. Under Rule 52 the question for an appellate court is whether "on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Company, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746; see also Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129. In the case at bar we have that definite and firm conviction. The objective facts establish that the loans were made to protect taxpayer's investment rather than in connection with his trade or business. Accordingly, taxpayer sustained a capital loss not proximately related to his trade or business and that loss may not be carried back to 1964.

Reversed and remanded with directions to enter judgment for the United States.