William N. HARSHA and Barbara J. Harsha, Appellants,

v.

UNITED STATES of America, Appellee.

No. 77–1572.

United States Court of Appeals, Tenth Circuit.

Submitted Nov. 17, 1978.

Decided Jan. 22, 1979.

Rehearing Denied Feb. 26, 1979.

amination revealed that Jeffery still suffered from an unstable back and could not engage in the type of loading and lifting activity normally associated with truck driving. Much of the pain associated with Jeffery's prior back trouble had been eliminated.

During this period of post-operative treatment, Jeffery became severely depressed. He viewed himself as a "parasite" living off society. He was unable to work. Jeffery relied on a veteran's pension and welfare for subsistence. He knew that, in all probability, he could not return to his old line of work and he worried about the future.

In an effort to provide psychological support and improve Jeffery's physical condition, Harsha conceived of a plan whereby Harsha and Jeffery would form a corporation, which in turn would employ Jeffery as a truck driver. In April of 1962, Bildon, Inc., was created. Harsha personally loaned $10,000.00 to the corporation for its start up costs. Harsha's intent in advancing the initial capital outlay and forming the corporation was solely to provide a means to encourage and rehabilitate Jeffery. Harsha testified, by deposition, that he entered into the agreement with no expectation of profit or personal gain.

Initially, the operation consisted of a single "rig" operated by Jeffery. According to Harsha, the therapeutic effect of the trucking operation on Jeffery was dramatic. He benefited both psychologically and physically.

The business, on the other hand, suffered financial reverses. In an effort to get the business "back on its feet," and avoid bankruptcy, Harsha personally underwrote the purchase of 23 additional trucks at a cost of approximately $600,000.00. Another $50,-000.00 to $75,000.00 was loaned to the company by Harsha for servicing, garaging and repairing the vehicles.

Aside from guaranteeing the expansion, Harsha paid, from time to time, the current

Gene A. Castleberry of Castleberry, Lisle & Kivel, Oklahoma City, Okl., for appellants.

Thomas M. Walsh, Tax Div., Dept. of Justice, Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Jonathan S. Cohen, Tax Div., Dept. of Justice, Washington, D. C., on brief; John E. Green, U. S. Atty. and Richard F. Campbell, III, Asst. U. S. Atty., Oklahoma City, Okl.), for appellee.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

William N. Harsha and Barbara J. Harsha [1] (Harsha) appeal from an order granting summary judgment to the United States of America (IRS) in a tax refund suit brought pursuant to 28 U.S.C. § 1346(a)(1).

Harsha is an orthopedic surgeon practicing medicine in Oklahoma City, Oklahoma. In 1960, Don W. Jeffery, a truck driver, came to Harsha complaining of "back trouble." Harsha's treatment of the problem, which extended from 1960 to 1968, included removal of a ruptured disk, spinal fusion, removal of an infected bone wax granuloma, physical therapy, bracing, and exercise.

By April, 1962, all surgical procedures had been completed. Nevertheless, an ex-

---

1. Mrs. Harsha was made a party to this action and joined in the appeal solely for the reason that she and her husband filed joint tax returns for the years in question.

operating expenses of the business. By the latter part of 1965, Harsha had personally guaranteed in excess of $900,000.00 of the corporation's debts. Bildon, Inc., ceased business in February of 1966. Thereafter, the creditors called on Harsha to fulfill his guarantees. Ultimately, Harsha settled his obligations for $208,766.40. It is this amount which Harsha claims to be deductible on a dollar-for-dollar basis as a business bad debt.

The sole question on appeal is whether Harsha's losses are sufficiently related to his medical practice to be fully deductible as business bad debts, as opposed to non-business bad debts which must be deducted as short-term capital losses.

## I.

Tax deductions are matters of legislative grace which do not turn on general equitable considerations. *Commissioner of Internal Revenue v. Nat. Alfalfa Dehydrating*, 417 U.S. 134, 94 S.Ct. 2129, 40 L.Ed.2d 717 (1974). *Deputy v. Du Pont*, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940). In asserting a claim for deduction, a taxpayer must show that he has satisfied every requirement of the appropriate statute and its accompanying regulations. *See, New Colonial Company v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934).

Section 166(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 166(a) provides for the deduction of bad debts which become worthless during the taxable year. In the case of an individual taxpayer, this deduction is allowed as an offset against ordinary income only if the debt is a "business" debt. 26 U.S.C. § 166(d)(1)(A). The treasury regulations interpreting § 166, as it applies to individual taxpayers, require that the taxpayer claiming a "business" bad debt allowance establish (1) that he is engaged in a trade or business, and (2) that the bad debt loss is proximately related to the conduct of that trade or business. 26 C.F.R. 1.166–5(b) (1977). *See also: Whipple v. Commissioner of Internal Revenue*, 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1963).

In *United States v. Generes*, 405 U.S. 93, 92 S.Ct. 827, 31 L.Ed.2d 62 (1972), the Supreme Court held that the proper standard for determining whether a bad debt has a "proximate" relation to a taxpayer's business is whether the taxpayer's dominant motivation in making the loans or guarantees was to benefit his trade or business. *See also: Kelson v. United States*, 503 F.2d 1291 (10th Cir. 1974); *Hogue v. C.I.R.*, 459 F.2d 932 (10th Cir. 1972).

In assessing the question of what the dominant motivation of the taxpayer was at the time he made the loan or guarantee, objective facts surrounding the loan or guarantee, rather than subjective intent, control. *Kelson v. United States, supra*, at p. 1293. Where, however, it is clear that the taxpayer's subjective intent in making the loan or guarantee in question was not to benefit his trade or business, summary judgment is proper.

In *Imbesi v. C.I.R.*, 361 F.2d 640 (3rd Cir. 1966), cited with approval by the Supreme Court in *United States v. Generes, supra*, the Court stated:

The primary intent or motive of the taxpayer has always been the ultimate test for determining whether losses are deductible because incurred in a trade or business . . . or on the other hand are not deductible because they are personal expenses. [Citations.]

It is true that motive ordinarily is not put in[to] issue. This is because the usual enterprise is surrounded by the conventional characteristics of a business or profession, and profit motive, therefore, is taken for granted. Indeed, it would seem an invasion of privacy to inquire whether a physician or a lawyer loved his work and engaged in it for pleasure, although cases may readily be called to mind of physicians and lawyers who remained devoted to their profession despite the greater financial reward their talents would bring them in commercial or industrial activities. Men of wealth may continue a business out of consideration of the welfare of their employees, or to carry on a family name, rather than to continue the accumulation of profits. In such cases the customary indications of a

business enterprise so surround the activity that little thought arises of penetrating from the external appearance to the taxpayer's intention and motive in order to determine whether at its core there may lie a pleasure-seeking or philanthropic motive which made the profit-seeking motive secondary. The reason for this, however, is not that motive is irrelevant, but that a predominant profit motive simply is assumed. *Thus, the profit motive will be inquired into even though the activity has all the surface appearance of a business, if it is shown to have been arranged in a manner which fundamentally contradicts a profit-making purpose.* (Citation.) (Emphasis supplied.)

361 F.2d at pp. 644–645.

 The underlying rule of *Imbesi* is that activities constituting a trade or business, for the purposes of the internal revenue laws, must occupy a substantial amount of the taxpayer's time and such activities must be entered into in good faith for the purpose of making a profit. However, while profit-motivation is required, it is not necessary that the venture actually return a profit. *See: United States v. Gilmore*, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963); *King v. United States*, 545 F.2d 700 (10th Cir. 1976); *United States v. Henderson*, 375 F.2d 36 (5th Cir. 1967), *cert. denied*, 389 U.S. 953, 88 S.Ct. 335, 19 L.Ed.2d 362 (1967); *Serino v. United States*, 252 F.Supp. 717 (S.C.1966). Thus, it follows that a taxpayer's dominant motivation in making a loan or guarantee that results in a business bad debt must be to advance or preserve the profit-making activities of his trade and business.

Harsha testified that he did not expect or anticipate any financial reward or financial remuneration from either the guarantees or the initial loan made to Bildon, Inc. By executing the guarantees and advancing the money he did not seek to advance or preserve the profit-making aspects of his medical practice.

 We are aware that summary judgment must be denied unless the moving party demonstrates his entitlement to it beyond a reasonable doubt. *Madison v. Deseret Livestock Company*, 574 F.2d 1027 (10th Cir. 1978). Pleadings and documentary evidence must be construed liberally in favor of the party opposing the motion. *Harman v. Diversified Medical Investments Corporation*, 488 F.2d 111 (10th Cir. 1973), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1727, 48 L.Ed.2d 195 (1976). Factual inferences tending to show triable issues of material fact should be viewed in the light most favorable to the existence of such issues in assessing a motion for summary judgment. *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 F.2d 168 (10th Cir. 1974). Nevertheless, when a motion for summary judgment is properly made and supported by pleadings, depositions and documents, as here, and the opposing party fails to raise a triable issue of material fact, summary judgment must be granted. *Ando v. Great Western Sugar Company*, 475 F.2d 531 (10th Cir. 1973).

Harsha, by his own admissions, established that the loans and guarantees in question were not made in the good faith anticipation of either advancing or preserving the profit motive expectations of his medical practice. Accordingly, we must hold that summary judgment was properly granted.

WE AFFIRM.