**Wilfred YAZZIE, on behalf of himself and all others similarly situated, Plaintiffs,**

**v.**

**RAY VICKER'S SPECIAL CARS, INC. d/b/a Ray Vickers Auto Pawn, Defendant.**

**No. CIV 97–0776–MV/WWD.**

United States District Court, D. New Mexico.

July 6, 1998.

See also, 180 F.R.D. 411.

customer pawning a vehicle to pay a "storage fee" for the motor vehicle.

On or about September 18, 1996, Plaintiff pawned his Chevrolet Camino at Ray Vickers. At the time of the transaction, Plaintiff was issued Ray Vicker's standard pawn ticket and was charged a $30.00 "storage fee."

Plaintiff subsequently filed a putative class action suit alleging that Ray Vickers' motor vehicle pawn operation violates the Federal Truth in Lending Act (Count I), the New Mexico Pawnbrokers Act (Count II) and the New Mexico Unfair Trade Practices Act (Count III). Specifically, Plaintiff alleges that the "storage fee" is a charge imposed incident to the extension of credit and that Ray Vickers' failure to include the "storage fee" as a finance charge is a violation of the Federal Truth in Lending Act ("TILA") and constitutes an excessive pawn service charge in violation of the New Mexico Pawnbrokers Act. Plaintiff also alleges that the standard pawn ticket issued by Ray Vickers contains numerous violations of TILA and the New Mexico Pawnbrokers Act.

Richard Feferman, Susan Warren, Albuquerque, NM, for Plaintiffs.

John M. Kulikowski, Albuquerque, NM, for Defendant.

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

VAZQUEZ, District Judge.

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment filed May 14, 1998 **[Doc. No. 31]**. The Court, having considered the parties' pleadings, the relevant law, and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED.**

### FACTUAL BACKGROUND

Defendant Ray Vickers Special Cars, Inc. ("Ray Vickers") owns and operates an auto pawn business in Farmington, New Mexico. When a customer pawns a motor vehicle at Ray Vickers, Ray Vickers issues the customer a standard pawn ticket and requires that the customer leave the pawned vehicle at Ray Vickers. Ray Vickers requires each

### LEGAL STANDARD

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to " 'secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B & B Chemical Co.,* 2 F.3d 995, 996 (10th Cir.1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for

trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States,* 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* 477 U.S. at 322, 106 S.Ct. 2548.

## DISCUSSION

### A. The Federal Truth in Lending Act

■ Congress enacted the Federal Truth in Lending Act ("TILA") to protect consumers from inaccurate and unfair credit practices and to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). As remedial legislation, TILA is to be enforced strictly against creditors and construed liberally in favor of consumers. "Only adherence to the strict compliance standard will promote standardization of terms which will permit consumers readily to make meaningful comparisons of available credit alternatives." *Fairley v. Turan–Foley Imports, Inc.,* 65 F.3d 475, 479 (5th Cir.1995).

■ TILA only applies to "consumer credit" which is defined as "credit offered or extended to a consumer primarily for personal, family, or household purposes." 12 C.F.R. § 226.2(a)(12). Plaintiff has submitted an affidavit declaring that the proceeds of the pawn loan were used for personal, family or household purposes. Defendant notes that if evidence was submitted at trial that demonstrated that the proceeds of the pawn loan were used by Plaintiff for business or investment purposes, then a complete defense to the TILA claim would be established. Defendant does not, however, come forward with any evidence controverting Plaintiff's assertion that the proceeds of the loan were used for personal, family or household purposes. Defendant's observation that TILA would not apply if the loan proceeds were used for business or investment purposes is insufficient to controvert Plaintiff's sworn statement that the loan proceeds were used for personal, family or household purposes.

### 1. Storage Fees

■ Plaintiff contends that the "storage fee" imposed by Defendant is a finance charge under TILA. TILA defines "finance charge" as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605. A finance charge includes any "service, transaction, activity or carrying charges." 12 C.F.R. § 226.4(b)(2). For purposes of determining whether a charge is a "finance charge" under TILA, the important question is whether the seller refuses to extend credit until the consumer agrees to pay the charge and details of the manner in which the charge is imposed are irrelevant. *Berryhill v. Rich Plan of Pensacola,* 578 F.2d 1092, 1099 (5th Cir.1978).

In this case, Defendant requires each customer to pay a $30.00 "storage fee" at the beginning of each pawn transaction.[1] This

---

1. Plaintiff contends that Defendant charges each customer a minimum storage fee of thirty dollars. Defendant asserts that the thirty dollar initial charge is based on an estimated thirty-day pawn with refunds made at the rate of one dollar per day if the car is redeemed in less than thirty days. This assertion appears to be contrary to deposition testimony given by Ray Vickers as well as pawn records provided by Ray Vickers. However, even assuming this assertion to be true, the analysis of whether the storage fees constitutes a "finance charge" under TILA is unchanged. At most, this disputed fact is relevant to damages and not to resolution of the summary judgment motion.

fee is used by Defendant, in part, to pay for a security guard to protect the pawned vehicles on Defendant's property.

Defendant argues that the "storage fee" is an impound payment which is excluded from the finance charge under 12 C.F.R. § 226.4(c)(7)(iv). This section, however, only applies to credit transactions involving real property or residential mortgage transactions and is not relevant to the pawn transactions involved in this case.

It is undisputed that Defendant would not have extended credit unless the pawned car was left in its possession and the storage fee paid. The "storage fee" is a "service, transaction, activity or carrying charge" which would not have been imposed but for the credit transaction and should have been included in the finance charge. Failure to include the $30.00 "storage fee" as part of the finance charge resulted in a significant understatement of the annual percentage rate and finance charge on the pawn ticket in violation of TILA.

### 2. TILA Disclosures on Pawn Ticket

Plaintiff contends that Defendant's standard form pawn ticket violates TILA by inadequately disclosing required information. The purpose behind TILA is to protect consumers from inaccurate and unfair credit practices by making it easier for consumers to understand how much they are paying for credit. In furtherance of this purpose, TILA requires certain disclosures and mandates how a lender must make the required disclosures. Key mandatory disclosures include the amount financed, finance charge, annual percentage rate, payment schedule, and security interests. *See* 12 C.F.R. § 226.18. TILA disclosures must be made "clearly and conspicuously" and in a way "that does not obscure the relationship of the terms to each other." *See* 12 C.F.R. § 226.17(a)(1), 15 U.S.C. § 1632(a). TILA disclosures must be grouped together and segregated from everything else. 12 C.F.R. § 226.17(a)(1). The Federal Reserve Board Official Staff Commentary recommends that the lender set TILA disclosures off from other information on the contract by providing the disclosures on a separate sheet of paper or by outlining them in a box, by using bold print dividing lines, by using a different color background, or by using a different type style. Commentary, 12 C.F.R. § 226.17.

TILA also requires that the terms "finance charge" and "annual percentage rate" be more conspicuous than any other disclosure other than the creditor's identity, 12 C.F.R. § 226.17(a)(2), and that a lender provide a brief description of the required terms. For example, TILA regulations suggest that the descriptive explanation of "finance charge" be "the dollar amount the credit will cost you." 12 C.F.R. § 226.18(d).

TILA mandates that a lender disclose the annual percentage rate by using that term and providing a brief description of the term. 12 C.F.R. § 226.18(e). The term "annual percentage rate" does not appear on Defendant's standard form pawn ticket and is not described. The abbreviation "A.P.R." does appear on the pawn ticket but it is contained in the middle of a paragraph in the smallest print on the pawn ticket.

The pawn ticket contains a section entitled "Financial Information" which lists the "amount financed," "finance charge," "storage fee," and "tax." This section, however, does not contain all required TILA disclosures. Furthermore, this section is similar in appearance to a section entitled "Customer Information" and is less conspicuous than the section setting forth information on the vehicle used for collateral which is outlined in a box. Defendant's pawn ticket also fails to provide the customer a brief descriptive explanation of the meaning of the required TILA disclosures.

The Court finds that Defendant's standard form pawn ticket contains numerous violations of TILA including misrepresenting the finance charge, failing to describe required terms, failing to include required terms, and failing to segregate required information.

### B. New Mexico Pawnbrokers Act

The New Mexico legislature passed the Pawnbrokers Act, in part, to "prevent frauds, unfair practices, discriminations against, impositions on or abuses of the citizens of New Mexico...to protect from exploitation, abuse or its own improvidence that segment of society in this state which relies from time to

time for its need upon money or credit extended by pawnbrokers." § 56–12–3 N.M.S.A. 1978 (1996 Repl.).

 The Pawnbrokers Act broadly defines "pawn service charge" as "the sum of all charges, payable directly or indirectly by the pledgor and imposed directly or indirectly by the pawnbroker as an incident to the pawn transaction." § 56–12–2(B)(1985) N.M.S.A. 1978 (1996 Repl.). This definition is virtually identical to the definition of "finance charge" under TILA and therefore, for the reasons set forth above, the "storage fee" is appropriately considered a pawn service charge under the Pawnbrokers Act.

The Pawnbrokers Act limits the amount of the pawn service charge to ten percent of the amount loaned or $7.50, whichever is greater, for the first thirty days of the loan. When pawn loans exceed one month, the pawn service charge can be no more than four percent per month for the period after the first month. § 56–12–13 N.M.S.A. 1978 (1996 Repl.). Defendant charges customers the maximum pawn service charge authorized under the statute plus the "storage fee"—thereby exceeding the amount of pawn service charge permitted by the Pawnbroker's Act.

The Pawnbroker's Act also states that "[e]very pawnbroker shall at the time of each pawn transaction deliver to the person pawning any good, a ticket signed by the pawnbroker containing the substance of the entry required to be made in his report pursuant to 56–12–9 N.M.S.A. 1978." § 56–12–10 N.M.S.A. 1978 (1996 Repl.). Section 56–12–9 requires a pawnbroker to make reports to the local police department which include a "description of the person offering the item including sex, complexion, hair color, approximate height and weight, and date of birth" and the "type of identification used by person offering item." § 56–12–9 N.M.S.A. 1978 (1996 Repl.).

Defendant's pawn tickets do not provide a physical description of the customer or list the type of identification used by the customer. Defendant argues that it fulfills the identification requirements of the Pawnbrokers Act by attaching a copy of the customer's driver's license to the pawn ticket. However, the plain wording of the statute requires that this information be located on the pawn ticket. Therefore, even if the driver's license contained all the required information, attaching a copy of the driver's license to the pawn ticket would not constitute compliance with the statute.

### CONCLUSION

The undisputed material facts reveal that the "storage fee" collected by Defendant is a charge imposed incident to the extension of credit and Defendant's failure to include the "storage fee" as a finance charge is a violation of TILA and constitutes an excessive pawn service charge in violation of the New Mexico Pawnbrokers Act. In addition, the information Defendant provides on its pawn tickets is inadequate under both TILA and the New Mexico Pawnbrokers Act. Plaintiff is entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment filed May 14, 1998 **[Doc. No. 31]** is **GRANTED.** Judgment is hereby entered in favor of Plaintiff on Counts I and II of Plaintiff's Amended Class Action Complaint. Damages will be determined at the trial on this matter.