John S. TAFT and Virginia M. Taft and John Taft Electric Company, a corporation, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 17593, 17594.

United States Court of Appeals Ninth Circuit.

March 8, 1963.

William T. Selby, Ventura, Cal., for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, and Donald P. Horwitz, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before CHAMBERS and JERTBERG, Circuit Judges, and ROSS, District Judge.

ROSS, District Judge.

This is a petition to review the decisions entered by the Tax Court in two separate cases. The Tax Court consolidated the cases for trial and briefing and they have also been consolidated for purposes of this proceeding. We have jurisdiction to hear this matter pursuant to the provisions of 26 U.S.C. § 7482 (1958).

Petitioners in the first case, number 17593, are John S. Taft (hereinafter Taft) and Virginia M. Taft, husband and wife. In the second case, number 17594, the petitioner is John Taft Electric Company, a corporation.

We will briefly set forth the pertinent facts and then discuss each case separately.

In 1953 and for some years prior thereto Taft was the sole proprietor of the John Taft Electric Company, a sole proprietorship engaged in the electrical contracting business. All of the assets of the proprietorship were in Taft's own name. In about 1953, in connection with discussions with his attorney over the preparation of a will Taft decided to incorporate the proprietorship. Taft's attorney was a director of the Rocklite Company, a corporation (hereinafter Rocklite). Rocklite had been engaged in the manufacturing and selling of lightweight aggregate, a construction material. Rocklite had deficits of $3,818.81 in 1950 and $7,599.52 in 1951, and by 1953 had disposed of its physical assets and was inactive. All of Rocklite's stock was held by one Margaret Keller. Taft's attorney informed Taft that its shares were available for purchase at one dollar per share.

On April 12, 1954, the directors of Rocklite adopted a resolution changing its name to John Taft Electric Company, and changing the purpose of said corporation to electrical contracting.

On June 16, 1954, the directors adopted a resolution authorizing that Taft's electrical contracting business be purchased for $106,931.82, which was its book net worth. On June 16th Taft was elected president of the corporation. Prior to

said date he was in no way connected with the corporation.

On June 29, 1954, Taft executed an agreement whereby he transferred his sole proprietorship to John Taft Electric Company, a corporation. In return for the business transferred to it, John Taft Electric Company, a corporation, gave Taft a promissory note for $106,931.82. Said note was payable on demand and was unsecured and non-interest bearing. The corporation carried this note on its books as a long term indebtedness. Upon completion of said transaction the corporation had assets of $106,931.82 and was indebted to Taft for the same amount.

On June 29, 1954, Margaret Keller sold 705 shares of the corporation and received one dollar per share therefor. 355 shares were sold to Taft, 70 to each of his four children and 14 to each of five employees of Taft. This constituted all of the shares of the corporation.

The corporation made payments to Taft in each year from and including 1954 to and including 1959, at which time the note was paid in full. In 1954 the amount paid Taft by the corporation was $25,613.02. This amount was paid from earnings and profits of the corporation during 1954. Taft did not report said amount as income on his 1954 tax return. In 1954 nothing was paid to the other stockholders as dividends or otherwise except for the salaries paid to the employees including Taft.

In 1958 the corporation formally declared a dividend which was distributed in 1959 to all shareholders of record. Prior to that time, no formal dividends were declared or paid by the corporation.

In its income tax return for the year 1954, the corporation deducted as a net operating loss deduction the amount of $11,418.33, of which amount $3,818.81 represented a net operating loss incurred in 1950, and $7,599.52 represented a net operating loss incurred in 1951.

The first case, number 17593, involves the 1954 tax liability of Taft and his wife. More specifically it relates to the tax treatment given to the $25,613.02 which was paid by the corporation to Taft in 1954. The respondent, Commissioner of Internal Revenue, determined that said payment constituted a payment of a dividend to him in the year 1954 and the Commissioner included the same as income.

The Tax Court held that Taft and his wife had failed to prove that the Commissioner was incorrect in his determination that the payment of the $25,613.02 was a dividend to Taft in the year 1954.

In their Petition for Review in connection with the first case, number 17593, petitioners state that the only question presented by said petition is: "Were the payments to John Taft from the John Taft Electric Company the result of an obligation resulting from a bona fide indebtedness or were such payments dividends?". Record, p. 32.

A similar question was held to be one of fact. See Wilbur Sec. Co. v. Commissioner, 279 F.2d 657, 658 (9th Cir., 1960). To this writer the question appears to be mixed question of law and fact. At any rate, we hold that the decision of the Tax Court is clearly erroneous and therefore it will be reversed.

The following factors buttress our conclusion.

The certificate evidencing the indebtedness was termed therein a "Promissory Note".

Taft had a right to enforce the payment of the note and the obligation to pay was positive and unconditional.

The note was not subordinated to any other indebtedness.

The sale of Taft's sole proprietorship to the corporation resulted in no additional voting power to Taft nor did it change his proportionate equity interest in the corporation.

Prior to 1958 no formal dividends were declared and prior to 1959 no dividends were paid by the corporation.

The payment of the note was not contingent upon earnings.

The parties intended [1] that the note would represent a corporate indebtedness, and it was carried on the books of the corporation as a long term debt. In each of the years that payments were made, the indebtedness was reduced on the books of the corporation. The note was paid in full.

In conclusion it is interesting to observe that in 1954 Taft had $106,931.82 in tax paid assets which he transferred to the corporation. In 1959, when he was repaid, he still had only $106,931.82. However, the Commissioner seeks a double taxation. He treats the payments [2] as dividends, and insists that Taft should pay taxes thereon. Under our holding he need not.

The second case, number 17594, involves the 1954 tax liability of the John Taft Electric Company, a corporation. More specifically it relates to whether the corporation is entitled to a net operating loss carry-over arising from Rocklite's operations in 1950 and 1951. The Tax Court held that 26 U.S.C. § 382(a) (1958), pertaining to net operating loss carry-overs, bars the corporation's claim to the net operating loss carry-over deduction and that the Commissioner correctly disallowed the deduction to the corporation.

In its opinion the Tax Court observed that section 382(a), as applied to this case, disqualifies a net operating loss carry-over from prior years if three conditions were met by December 31, 1954, the end of the corporation's taxable year; (1) if Taft owned 50 percentage points more of the total fair market value of the corporation's outstanding stock than he did on June 22, 1954; [3] (2) if the increase in his ownership was attributable to purchase by him of such stocks; and (3) if the corporation had not continued to carry on a business substantially the same as that conducted before any change in stock ownership took place.

Applying the pertinent facts to section 382(a), it appears that on December 31, 1954, Taft owned 50 percentage points more of the total fair market value of the corporation's outstanding stock than he did on June 22, 1954. As a matter of fact, Taft owned no stock of the corporation on June 22, 1954, but purchased 355 shares thereof on June 29, 1954. The corporation did not enter into the electrical contracting business until June 29, 1954. Therefore, it follows that Taft Electric Company is not entitled to a net operating loss carry-over, and the decision of the Tax Court will be affirmed. It is therefore,

ORDERED, that the order and decision entered in the first case, number 17593, is hereby reversed. It is,

FURTHER ORDERED, that the order and decision entered in the second case, number 17594, is hereby affirmed.

---

1. The intent of the parties as to the nature of the transaction is important. See Wilshire & W. Sandwiches, Inc. v. Commissioner, 175 F.2d 718, 720 (9th Cir., 1949).

2. We are only concerned herein with the payment received in 1954.

3. This date is determined pursuant to the provisions of 26 U.S.C. § 394(b) relating to the beginning of the taxable years specified in clauses (i) and (ii) of § 382 (a) (1) (A).