Leonard **LUNDGREN** and Evelyn Lundgren, Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Appellee.

No. 20897.

United States Court of Appeals
Ninth Circuit.

April 14, 1967.

**624**

William H. Kinsey, Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for appellant.

Mitchell Rogovin, Asst. Atty. Gen., Lester R. Uretz, Chief Counsel, Gilbert Andrews, Atty., Tax Div., Dept. of Justice, Lee A. Jackson, David O. Walter, Robert I. Waxman, Washington, D. C., for appellee.

Before CHAMBERS, Circuit Judge, MADDEN, Judge of the United States Court of Claims, and BROWNING, Circuit Judge. .

MADDEN, Judge:

This is an appeal from a decision of the Tax Court affirming a determination of the Commissioner of Internal Revenue which denied a deduction claimed as a business bad debt under section 166 of the Internal Revenue Code of 1954. Leonard Lundgren (hereinafter referred to as petitioner) and Evelyn R. Lundgren are husband and wife. Evelyn is a party to the proceedings only because the Lundgrens filed a joint income tax return for the year involved.

There is no controversy concerning the facts. We recite them substantially as set out in the respondent's brief.

Petitioner has been engaged in the timber and lumber manufacturing business during his adult life. He has organized various timber and lumber businesses, has been and now is an officer thereof, and presently has substantial stock holdings in various timber manufacturing and sales enterprises. Prior to 1951, petitioner conducted his business as a

sole proprietor at Bend, Oregon. In 1951 this business was reorganized into a partnership in which petitioner had the controlling interest. In 1952 petitioner organized and incorporated Lundgren Sales Corporation to act as a sales agent for his lumber manufacturing business. About the same time he organized a sawmill at Sisters, Oregon, as a sole proprietorship. Throughout the period involved, petitioner bought and sold timber and timber cutting contracts to his various enterprises at a profit to himself.

The partnership was reorganized into two corporations in 1956. The majority of the assets were transferred to Lelco Corporation, which took over the Oregon operations. The balance of the assets including a portable sawmill were transferred to RushMore Corporation, which was formed in South Dakota. Petitioner owned 59.6 percent of RushMore's stock after its incorporation and the transfer to it of the balance of the partnership assets.

RushMore needed money to provide additional facilities at the South Dakota site but was unable to obtain loans from banks. Consequently, a loan of $250,000 was sought from the United States Small Business Administration (SBA). As conditions for the loan, the SBA required the petitioner to act as a guarantor and to advance to RushMore an additional $145,000 of his own money, and to agree that while the loan was outstanding he would sell his timber interests in South Dakota to RushMore at cost and that no salaries would be paid to any officer of RushMore without the SBA's approval.

RushMore had financial difficulties and was unable to meet the SBA loan installments as they came due. Subsequently, a fire at RushMore destroyed the sawmill and related facilities, and RushMore never resumed operations. It received insurance proceeds, which were required to be applied against the SBA loan, and thereafter the loan was paid in full. It has been stipulated by the parties in this case that if the petitioner's advances of $145,000 represented indebtedness rather than equity capital,

the advances became worthless during 1961 to the extent of $129,000.

The Tax Court held that the losses involved were "nonbusiness debts" and denied deduction of the $129,000 claimed by the petitioner under section 166. Section 166(a) and (d) permits deduction of any debt, other than a nonbusiness debt, which becomes worthless during the taxable year. A nonbusiness debt is defined in section 166(d) (2) as any debt other than "(A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." Treasury Regulation section 1.166–5(b) (2) further provides that the loss is deductible only if "the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer" is "proximate."

The Tax Court concluded that petitioner was engaged in the trades or businesses of (1) rendering services as an officer and employee to his various Oregon enterprises, but that he was not so engaged with regard to his activities in connection with RushMore and; (2) of selling lumber to various entities for profit and (3) of operating a sawmill at the plant in Sisters, Oregon. The deduction was denied, however, because the Tax Court found no proximate relation between the loans to RushMore and any of the trades or businesses in which the court found petitioner to be engaged. The court also found as facts that petitioner had never sold his stock in any of the corporations which he had formed or controlled, and that he did not form RushMore with the intent of realizing gain through the receipt of dividends or through selling its stock at a profit.

We consider first the question whether the advances to RushMore created debts of any kind or were in reality additional contributions to the equity of the corporation. Without deciding this question, the Tax Court expressed doubt that the advances did create genuine indebted-

ness.[1] Whether we consider the question one of fact or one of mixed law and fact (see Taft v. C. I. R., 314 F.2d 620, 622 (CA9, 1963)), we hold that the advances did create genuine indebtedness, and we find it unnecessary, on the facts before us, to remand to the Tax Court for more specific findings.

■ The Tax Court's position regarding the genuineness of the debt was based primarily on the fact that outside sources would not have made the advances, in the circumstances, and emphasized the comparative risk of petitioner's advances over the secured position of the SBA loan. The decision of this court in Taft v. C. I. R., supra, indicates that these factors are not, of themselves, controlling. In Taft the taxpayer transferred assets valued at $106,931.82 to a corporation in which he owned a majority of the stock, receiving in return an unsecured, non-interest bearing demand promissory note in the amount of $106,931.83. Operating losses had previously exhausted paid-in capital, so that the only assets of the corporation were those received from the taxpayer, offset by the note for their full value. The corporation was thus left with a zero net worth. Emphasizing that fact, the Tax Court held the consideration for Taft's note was placed at the risk of the business and concluded that the note represented an equity rather than a creditor interest. John S. Taft, 20 CCH TaxCt.Mem. 1135 (1961). Despite the fact that there was no equity cushion at all in Taft, and that taxpayer's advances were thus entirely at the risk of the business, this court reversed the Tax Court's finding and held that the advances had, in the factual context presented, created genuine indebtedness. Taft v. C. I. R., supra at 622.

■ There are no rules of thumb by which to determine a debt versus equity

question, and it is not necessary here to catalogue the many considerations relevant to that determination. The answer depends on the particular circumstances of each case, and our determination here is based on the following circumstances present in this case.

The promissory notes were conventional in form and payment was not contingent upon earnings. While the notes and the 4 percent interest they bore were subordinated to the SBA loan, that subordination was required by the terms of the SBA loan agreement. The notes were not subordinated to any other creditors and were payable on demand after retirement of the SBA loan, which had a six year maturity.

All the documentation of the transaction indicates that the parties intended the advances to create conventional debts, and this court has recognized the relevance to this issue of the parties' intent as to the nature of the transaction. Taft v. C. I. R., supra at 622; Wilshire & W. Sandwiches, Inc. v. Commissioner, 175 F.2d 718, 720 (CA9, 1949). The SBA loan application and SBA loan authorization referred to the advances as loans. A pro forma balance sheet prepared by a representative of the SBA showed petitioner's advances as liabilities. An offering circular filed by RushMore with the Securities and Exchange Commission stated that Rush-More was indebted to petitioner in the amount of $144,968.55 and that the amount was to be repaid after repayment of due SBA loan.

■ The advances did not result in an increase in petitioner's voting power or change his proportional equity interest in the corporation. Considering all of these circumstances, we find that petitioner's advances to RushMore created bona fide debt.

---

1. As reasons for its doubt the Tax Court stated:

The fact that no outside source would make the advances, the fact that the advances were subordinate to the S.B.A. loan, the fact that the advances had to be made before the S.B.A. would grant its loan, the fact that the interest rate was 4 percent while the S.B.A. interest rate was 6 percent, and the fact that the advances were all uninsured while the S.B.A. loan was fully guaranteed and covered by mortgages all seem to indicate that the advances were in reality contributions to the capital of RushMore.

██ Whether a particular loss or expense is incurred in a taxpayer's trade or business is a question of fact in each particular case. Higgins v. C. I. R., 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941); Treas.Reg. section 1.166–5 (1959). When the determination involves the interpretation of a statute, however, the question is a mixed one of law and fact and is subject to review by this court. United States v. Keeler, 308 F.2d 424 (CA9, 1962). Our question is, then, whether the Tax Court correctly applied the statute to the factual situation found by the Tax Court.

To meet the "trade or business" requirement of the statute, petitioner first contends that the Tax Court erred in failing to find that his activities in connection with RushMore constituted the trade or business of supplying management and other services to that corporation as an officer and employee, and that the advances involved were made "in connection with" this trade or business. Petitioner and respondent each claim that Whipple v. Commissioner of Internal Revenue, 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1963), determines in his favor the issue of whether petitioner's activities in connection with RushMore did constitute a separate trade or business within the meaning of the statute.

In Whipple the taxpayer had organized a number of corporations, contributing to each his services and such financial backing as was required. The taxpayer subsequently sold a number of these corporations, reporting the profit as long-term capital gain. As to one of the corporations, his loan proved uncollectible. The Supreme Court, affirming the Court of Appeals for the Fifth Circuit, held that the taxpayer's activities in connection with his corporations did not constitute an independent trade or business. Consequently, the bad debt resulting from the loan to one of the corporations could not be deducted in full from his income as a debt created or acquired in connection with a trade or business of the taxpayer.

The holding of Whipple was that the furnishing of regular services to one, or many, corporations cannot constitute an independent trade or business where the taxpayer's motivation is that of an investor and gain is sought in the form of dividends or enhancement in the value of the investment. This is so, the court reasoned, because previous cases had established that "investing is not a trade or business" within the meaning of the statute, and where a taxpayer seeks a return in the form of dividends or enhancement in the value of an investment "this return is distinctive to the process of investing * * *" Id. at 202, 83 S.Ct. at 1174. Hence, the court concluded:

Absent substantial additional information [11] furnishing management and other services to corporations for a reward not different from that flowing to an investor in those corporations is not a trade or business under § 23(k)(4) [the predecessor of § 166 under the Internal Revenue Code of 1939]. (Footnote omitted.) Id. at 203, 83 S.Ct. at 1174.

Respondent argues that the Whipple decision bars the deduction in this case because taxpayer's activities in relation to RushMore were, as in Whipple, no more than those of an investor seeking a return on his investment. Respondent's position here, however, conflicts with his stipulation in the Tax Court and the Tax Court's finding that petitioner did not form RushMore with the intent of receiving dividends or selling the stock at a profit. It also conflicts with the Tax Court's finding that petitioner was in the independent business of selling timber to various entities and petitioner's undisputed testimony that his purpose in forming RushMore was to realize gain through sales of timber to the corporation and receipt of a salary for his services to it.

These are not the kinds of gains marking an investor's return, characterized in Whipple as gain from dividends or enhancement in the value of the investment. It may be true, as respondent

points out, that one who has advanced substantial sums to a corporation in which he holds a controlling interest will expect an economic benefit from the investment over and above normal remuneration for services rendered. But as respondent's stipulation recognizes, and as the Tax Court found, this expectation need not always take the form of an investor's return. It is the kind of return the lender seeks that Whipple emphasizes; and where the return sought is shown to be different from that flowing to an investor, Whipple leaves open the question whether a taxpayer's services to his corporation may constitute an independent trade or business.

■ The facts of this case support petitioner's contention that his investment in RushMore was motivated in the first instance by expectation of gain from sales of timber to the corporation at a profit, a gain arising from petitioner's recognized business of selling timber, and not from the business of RushMore itself. In the circumstances of this case, we hold that petitioner's activities in connection with RushMore did constitute an independent trade or business.

We having found petitioner to be in the trade or business of rendering managerial and other services to RushMore, it follows that the debt involved here bore that proximate relationship to this trade or business which satisfies the "in connection with" requirement of the statute. See Treas.Reg. 1.166–5(b). Petitioner was unable to finance the RushMore venture through banks, and the necessary financing was obtained through the $250,000 loan from the SBA. As a condition of the loan, the SBA required petitioner to advance an additional $115,859 to RushMore, this amount being over and above $29,000 previously advanced by petitioner. RushMore's existence depended upon its ability to obtain the financing necessary to put its South Dakota operations under way. If the SBA loan had not gone through, the corporation—and petitioner's job with it—would have been finished. In a direct sense, therefore, the advances were related to petitioner's trade or business activities in connection with RushMore. See Weddle v. CIR, 325 F.2d 849, 851 (CA2, 1963).[2]

■ In so holding, we reject the Tax Court's conclusion that petitioner could not have been in the business of providing services to RushMore because he never received a salary from RushMore. Conditions of the SBA loan prohibited RushMore from paying its officers any salary without the SBA's permission. In all his previous timber and lumber enterprises petitioner's gain was realized through the sale of timber at a profit and receipt of a salary for services rendered, and petitioner's testimony that RushMore was formed to provide more of the same kind of gain as soon as the SBA restrictions were removed is not disputed. In determining whether the services rendered a corporation constitute the conduct of a trade or business, the anticipated gain need not be realized immediately. Hirsch v. Commissioner of Internal Revenue, 315 F.2d 731, 736 (CA9, 1963). That gain will not be recognized until some future time is but one factor to be considered in determining whether the loss claimed arose from a trade or business activity of the taxpayer or from activities peculiar to an investor.

We reach the same conclusion that the losses here involved are deductible in full under § 166 if we start from the other end of petitioner's argument in support of the deduction—that the debt was incurred in connection with his business of selling timber to various enterprises.

2. Because the Tax Court found that petitioner was not in a trade or business insofar as his activities with RushMore were concerned, the Tax Court made no findings with regard to whether the advances were proximately related to what the court found to be a non-existent business. We do not find it necessary to remand to the Tax Court for findings on this question, however, because any conclusion other than that which we have reached here would be clearly erroneous.

The Tax Court specifically found that petitioner was in the business of selling timber, and recognized that the RushMore venture was an attempt by petitioner to expand his timber business into the South Dakota area. It found, however, that the advances to RushMore were not related to petitioner's timber business because petitioner never sold any timber to the corporation at a profit.

As long as the SBA loan was outstanding, petitioner was required by the terms of the loan to sell timber to RushMore at cost. We find no significance, however, in the fact that petitioner was temporarily prohibited from making a profit on his timber sales to RushMore. Petitioner was in the trade or business of selling timber; he did sell two tracts of timber (at cost, pursuant to the loan agreement) to RushMore before the fire shut down the mill and, as the Tax Court recognized, he anticipated selling to RushMore at a profit when the loan was paid off. Whether petitioner ever in fact made a profit from timber sales to RushMore is not determinative of the question whether his advances to the corporation were made in connection with his business of selling timber.

In the circumstances of this case we think the advances were proximately related to petitioner's timber business. RushMore was formed because petitioner felt that good opportunities existed in the South Dakota area for the purchase of timber. Petitioner was to buy the timber himself, and the corporation was to provide an outlet for its sale at a profit and also provide a corporate employer from which petitioner could derive gain in the form of a salary. Neither of these objectives was realized before RushMore was forced to cease operations, but the anticipated benefit to petitioner's business of selling timber which expansion into a new area was expected to bring was real and direct. In the attempt to expand into a new area, the advances were made to an enterprise distinct from, but directly related to and formed in aid of, the timber business in which petitioner was engaged. In these circumstances losses arising from the loans are business bad debts. J. T. Dorminey, 26 T.C. 940 (1956); Louis Lesser, 42 T.C. 688 (1964), affirmed on other grounds, 352 F.2d 789 (CA9, 1965); Ray A. Meyers, 42 T.C. 195 (1964); compare United States v. Keeler, supra.

The decision of the Tax Court is reversed. The $129,000 business bad debt deduction claimed by the petitioner for the tax year 1961 should be allowed.